FILED
United States Court of Appeals
Tenth Circuit

May 15, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HENRY J. ADAMS, III,

    Defendant - Appellant.

No.  13-3207

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 6:12-CR-10232-EFM-3)

---

David H. Moses, Case, Moses & Zimmerman, P.A., Wichita, Kansas, for Defendant – Appellant.

David M. Lind, Assistant United States Attorney, (Barry R. Grissom, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff – Appellee.

---

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

Defendant Henry J. Adams III participated in a bank robbery on October 18, 2012. He was the lookout and recruited a friend to drive her car. After pleading guilty to the crime, he received an above-guidelines sentence of 140 months' imprisonment. On appeal he argues that he should have received an offense-level reduction for being a minor participant and that the district court abused its discretion in imposing an above-guidelines sentence. We hold (1) that he was not entitled to a minor-participant reduction because he helped plan the robbery and acted as the lookout and (2) that the district court did not abuse its discretion when it varied his sentence upward. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.      BACKGROUND

Defendant does not dispute the account of the offense in the presentence investigation report (PSR). We summarize the essentials.

Defendant told investigators that the idea to rob a bank came from Dlaney Nixon and Terry Revels. The two came to his house to discuss their plan. Defendant agreed to participate for a share of the money. He was assigned to be the lookout because he refused to enter the bank.

On the day of the robbery Defendant recruited a friend, Veronica Johnson, to drive him in her car, a blue Infiniti. All Johnson was told about the plan was that she should be ready "to do a 'hustle.'" R., Vol. 2 at 37. Defendant and Johnson met Nixon and Revels and followed their white Cadillac in the Infiniti. The three men planned to abandon the Cadillac after the robbery and complete their escape in the Infiniti. After a stop at

Nixon's house, both cars drove to a branch of Intrust Bank. When Nixon and Revels entered the bank, they each wore a mask and carried a black bag. One of them, holding what appeared to be a handgun, yelled at the tellers to "get down, get down," while the other yelled "where's the money?" *Id.* at 35 (internal quotation marks omitted). They took about $3,500 in cash from the bank. Defendant and Johnson waited in the Infiniti during the robbery.

Nixon and Revels fled the bank in their Cadillac, with Defendant and Johnson close behind. Their escape was stalled, however, when the road was blocked by a passing train. During the delay Revels got out of the Cadillac and put a black bag in the Infiniti. When he returned to the Cadillac, Defendant left the Infiniti and joined him. After they resumed their drive they saw a police officer, and Nixon and Revels began dividing up the money in the remaining black bag. The police signaled the Cadillac to stop, but the men kept driving for a few miles. When they eventually stopped, the three men fled on foot in different directions.

Officers pursued and caught Nixon, who was taken into custody. The officers had observed him throw money away before they reached him. Revels broke into a house where he tied up and threatened a 15-year-old boy, but he was scared away when the boy's father returned. The father alerted the police, who found Revels hiding in a pickup truck and arrested him. He had a significant amount of money on his person. Defendant and Johnson were found in the Infiniti not far from the abandoned Cadillac. (How Defendant got back to the Infiniti is not explained in the briefs or record.) The officers

3

who found them asked whether there were any weapons in the vehicle, and Defendant said that there was a gun. A search of the car uncovered a black bag under the driver's seat that contained clothing, money, and a realistic looking, but fake, handgun. All four suspects were taken to the county sheriff's office, where Defendant confessed to his role in the crime.

Defendant was indicted on one count of armed bank robbery under 18 U.S.C. §§ 2113(a) and 2113(d). He pleaded guilty in the United States District Court for the District of Kansas on March 25, 2013. The PSR calculated that his total offense level was 22 and that he had a criminal-history score of 19, comfortably more than the score of 13 necessary to place him in criminal-history category VI, the highest category. The resulting guideline sentencing range was 84 to 105 months' imprisonment. The PSR did not recommend an upward variance or departure. Defendant's single objection to the PSR was that it did not give him a two-level reduction in offense level for being a minor participant.

On August 2, 2013, three days before the sentencing hearing, the district court provided written notice that it was considering an above-guidelines sentence in light of Defendant's criminal history. At the sentencing hearing Defendant argued that he was entitled to a reduction in offense level for being a minor participant and that he should receive a sentence at the low end of the guideline range. The court denied Defendant's request for a minor-participant reduction, reasoning that "[h]e took the role as a lookout, as opposed to going into the bank, but the law is clear that all participants are equally

culpable for the events that they planned and knowingly participated in." *Id.*, Vol. 3 at 14. It also imposed an above-guidelines sentence of 140 months' imprisonment followed by four years of supervised release.

The district court explained that an important reason for its sentence was Defendant's extensive criminal history—he had "50 percent more points than are necessary to place him in a category VI," *id.* at 26, and he had "a long range of offenses that scored no points." *Id.* at 34. It observed that "one way to look at this history of criminal offenses is that it reveals an escalating level of offenses." *Id.* at 26. Further, it expressed concern that Defendant had repeatedly reoffended shortly after completing a sentence or while on probation. It concluded that Defendant's recidivist pattern indicated the need for a sentence that would deter further criminal conduct, promote respect for the law, and protect the public from further crimes, three of the sentencing factors set forth in 18 U.S.C. § 3553(a). The court also considered other factors under § 3553(a): it said that the nature of the offense was serious because it was an armed bank robbery; that the sentence should "provide [Defendant] with tools to promote and engage in a lawful lifestyle," including drug treatment, *id.* at 39; and that Defendant's sentence should reflect that he was as culpable for the bank robbery as Revels and Nixon. Defendant objected to the above-guidelines sentence.

In response to a question from Defendant's attorney about whether the district court had followed the recommended methodology for calculating a departure, the court explained:

5

My sentence is an upward departure, but it's also a variance based on the factors I previously stated that I think are appropriate to reflect that. . . . I think it's a sentence that reflects primarily the factors I have to consider under [18 U.S.C. § 3553(a)], so I view it as more of a variance ultimately than an upward departure in that nuance of criminal law.

*Id.* at 41. The day after the sentencing hearing, the court indicated in its written Statement of Reasons that it varied upward under 18 U.S.C. §§ 3553(a)(1) and (a)(2) to reach its sentence. It did not indicate that it had departed.

## II.    DISCUSSION

We first address Defendant's argument that he was entitled to an offense-level reduction for being a minor participant in the robbery and then turn to his claim that the district court erred when it imposed an above-guidelines sentence.

### A.    Minor-Participant Sentence Reduction

The sentencing guidelines state that the district court should decrease the defendant's offense level by two if he was "a minor participant in any criminal activity." USSG § 3B1.2(b) (2013). Defendant argues that he was entitled to that decrease. But the reduction is intended only for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* § 3B1.2 cmt. n.3(A). And a defendant is not entitled to a minor-participant reduction merely because "he is the least culpable among several participants in a jointly undertaken criminal enterprise." *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994). The defendant bears the burden of proving by a preponderance of the evidence that he was a minor participant in the crime. *See id.* at 1455. "A trial court's determination as to

6

whether a defendant was a . . . minor participant is a factual finding that we review only for clear error." *Id*.

Defendant argues that he is entitled to a minor-participant reduction because Nixon and Revels did most of the planning, he never entered the bank, and his recruitment of Johnson was "merely opportunistic." Aplt. Br. at 9 (italics and underlining omitted). But decisions of this court support the district court's finding that he was not a minor participant.

The most analogous precedential opinion is *Lockhart*. In that case the defendant had participated in a cocaine conspiracy by driving his codefendant to a bus station where the codefendant had arranged to pick up a bag of cocaine from an arriving passenger. *See* 37 F.3d at 1452–53. We held that the defendant was not a minor participant because he "knew that the purpose of driving to the bus station . . . was to obtain cocaine," and he expected "to be compensated for his involvement in the conspiracy." *Id.* at 1455. Defendant's role here reveals a similar level of culpability: he knew the plan's purpose— to rob a bank—and he provided transportation and expected to be compensated for his role.

An unpublished decision of our court, although not precedential, is also supportive. In *United States v. Hernandez*, 49 F. App'x 834 (10th Cir. 2002), we affirmed the district court's ruling that a defendant who drove his codefendant to the location of the robbery, supplied him with a gun, and planned to assist his escape was not entitled to a minor-participant reduction even though he did not "enter the credit

7

union, . . . brandish the gun, or threaten credit union employees." *Id.* at 836. The role of the defendant in *Hernandez* was greater than Defendant's role, but not substantially so.

In contrast, the one case cited by Defendant as supportive is readily distinguishable, both factually and procedurally. *United States v. Deanovich*, 34 F.3d 1077 (10th Cir. 1994) (unpublished table decision), involved a conspirator who got cold feet. The defendant had "disassociated himself from the robbery [by refusing to participate] about 45 seconds to a minute and a half before it occurred," and had attempted to dissuade his coconspirators from carrying out their plan. *Id.* (internal quotation marks omitted). And the district court's grant of a minor-participant reduction (which we review only for clear error) was not at issue on appeal. *See id.* Our sole holding was to affirm the district court's decision that the defendant was not entitled to a further offense-level reduction as a *minimal* participant. *See id.*

Moreover, when we look to other circuits for decisions involving facts like ours, we find strong support for affirming the district court's finding. In *United States v. Tucker*, 102 F. App'x 922 (6th Cir. 2004), the defendant argued that he qualified for a minor-participant reduction because his codefendants "had already planned the robbery and acquired the necessary materials" before he became involved, *id.* at 924. The Sixth Circuit held that the district court did not clearly err when it denied the reduction because the defendant fulfilled his assigned role as the lookout and getaway driver, and there was no reason to think that he lacked knowledge of the scope and structure of the robbery. *See id.* In *United States v. George*, 221 F. App'x 925 (11th Cir. 2007), the court held that

8

a defendant who participated in robberies of licensed firearms dealers was not entitled to a minor-role reduction even though he claimed that he did not want to participate and had acted only as the lookout. *See id.* at 926–28. The court noted that in addition to serving as the lookout, he had hoped to be compensated for his involvement and likely had knowledge of the overall scheme. *See id.* at 927–28. And in *United States v. Johnson*, 515 F. App'x 183 (3d Cir. 2013), *vacated and remanded on other grounds*, 2014 WL 1124839 (S. Ct. Mar. 24, 2014), the Third Circuit affirmed the district court's decision not to grant a downward adjustment for being a minor or minimal participant when the defendant agreed to be a lookout for a robbery and knew the scope of the enterprise. *See id.* at 190–91. Defendant's involvement in the robbery in this case was similar to the above examples—he acted as the lookout, planned to assist in the escape, and admitted to knowledge of the scheme. The district court did not clearly err when it denied him a minor-participant reduction in offense level.

B.    **Above-Guidelines Sentence**

Defendant argues that the district court abused its discretion when it imposed an above-guidelines sentence. "[W]e review sentences for reasonableness under a deferential abuse-of-discretion standard." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). "Reasonableness review" includes "a procedural and a substantive component." *Id.* (internal quotation marks omitted). The procedural component concerns how the district court calculated and explained the sentence,

9

whereas the substantive component concerns whether the length of the sentence is reasonable in light of the statutory factors under 18 U.S.C. § 3553(a). *See id.* at 1214–15.

Our review of a sentence outside the guidelines' recommended range "hinges on the method by which the district court selects the particular sentence." *Id.* at 1215. We therefore must begin with an explanation of the two methods by which a district court can impose an above-guidelines sentence: departure and variance.

Before the Supreme Court made the guidelines discretionary in *United States v. Booker*, 543 U.S. 220 (2005), the only method for increasing a sentence above the guidelines sentencing range was through a departure under Chapter Four or Five of the guidelines. Our review of departures was, and continues to be, strict. We apply a four-part test examining:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

*Alapizco-Valenzuela*, 546 F.3d at 1215 (internal quotation marks omitted). In particular, this examination reviews whether the extent of the departure is justified by reference to features of the guidelines. *See United States v. Walker*, 284 F.3d 1169, 1172 (10th Cir. 2002) ("We have repeatedly required district courts to explain their reasoning and to specify the facts or factors upon which they relied in selecting the final sentencing offense level for departing upward." (internal quotation marks omitted)). Additional

10

specific rules apply when the departure is under USSG § 4A1.3, which permits an adjustment if the criminal-history category fails to adequately reflect the seriousness of the defendant's criminal history. *See, e.g.*, *United States v. Robertson*, 568 F.3d 1203, 1213 (10th Cir. 2009) ("An upward departure under § 4A1.3(a)(2)(E) is only befitting if a defendant's prior, adult, criminal conduct is sufficiently similar to that underlying the instant offense."); *United States v. Sims*, 309 F.3d 739, 742–43 (10th Cir. 2002) (describing the method a district court must follow in calculating the sentencing range when departing upward on the ground that a defendant's criminal-history score underrepresents the defendant's history of criminal conduct); *United States v. Gardner*, 905 F.2d 1432, 1438–39 (10th Cir. 1990) (explaining the proper way to depart under the guidelines when the defendant's criminal history was similar to that of a career offender but he did not technically qualify for career-offender status).

On the other hand, when the nonguidelines sentence is simply an exercise of the discretion now afforded by *Booker*—what we call a variance—our review is limited. "In [*Booker*], the Supreme Court held that the mandatory application of the Guidelines to judge-found facts (other than a prior conviction) violates the Sixth Amendment." *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). The Court held that the appropriate remedy was to "excise[] the provision of the federal sentencing statute that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), effectively making the Guidelines advisory." *Id.* Although advisory, the guidelines remain "a factor to be considered in imposing a sentence." *Id.* In fact, "the starting point and the initial

11

benchmark for any sentencing decision must be a correctly calculated Guidelines sentencing range." *United States v. Todd*, 515 F.3d 1128, 1134 (10th Cir. 2008) (internal quotation marks omitted). But district courts need no longer follow the rules for departures in order to sentence outside the guidelines. *See United States v. Gantt*, 679 F.3d 1240, 1247 (10th Cir. 2012) ("Now that the Sentencing Guidelines are only advisory, there are no mandatory requirements as to when a district court may sentence a defendant to an above- or below-Guidelines sentence." (internal quotation marks omitted)). Instead, they can *vary* from the guidelines "through application of the § 3553(a) factors." *Alapizco-Valenzuela*, 546 F.3d at 1216; *see also Gantt*, 679 F.3d at 1247 ("A variance can be imposed without compliance with the rigorous requirements for departures."). In such cases, "we simply consider whether the length of the sentence is substantively reasonable utilizing the abuse-of-discretion standard." *Alapizco-Valenzuela*, 546 F.3d at 1216. We have declined to address arguments against variances that rely only on law applicable to departures. *See Gantt*, 679 F.3d at 1247. And, "given the district court's institutional advantage over [an appellate court's] ability to determine whether the facts of an individual case justify a variance . . . , we generally defer to its decision to grant, or not grant, a variance based upon its balancing of the § 3553(a) factors." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008).

Defendant's principal challenges to his sentence are (1) that the district court's sentence did not satisfy the four-factor test for examining a departure, (2) that it failed to appropriately justify the extent of its departure, (3) that it ignored the requirements for

departures by relying on criminal history that was not similar to the robbery, and (4) that it treated him as a career offender when he did not qualify as one. These arguments are primarily based on the law regarding departures. We therefore must determine whether the district court was departing or varying from the guidelines when it imposed its sentence.

The district court could have been more precise. It said that its sentence was "an upward departure, but it's also a variance," and then promptly added, "I think it's a sentence that reflects primarily the factors I have to consider under [18 U.S.C. §] 3553(a), so I view it as more of a variance ultimately than an upward departure in that nuance of criminal law." R., Vol. 3 at 41. In any event, the court's imprecision in language is not determinative. "[W]e need not rely solely on the district court's isolated use of the terms 'variance' or 'departure' when the court's language is ambiguous and our reading of the entire record suggests a contrary conclusion." *Alapizco-Valenzuela*, 546 F.3d at 1222. Here, the record as a whole clearly establishes that the sentence was a variance. In keeping with the procedure for imposing a variance, the district court expressly noted most of the factors under 18 U.S.C. § 3553(a) when it explained its decision to impose a longer sentence: the nature of the offense and the history of Defendant, *see id.* § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense and promote respect for the law, *see id.* § 3553(a)(2)(A); the need to deter criminal conduct, *see id.* § 3553(a)(2)(B); the need to protect the public from further crimes of Defendant, *see id.* § 3553(a)(2)(C); and the need to provide Defendant with educational or vocational

13

training and medical care to promote a lawful lifestyle, *see id.* § 3553(a)(2)(D). In contrast, it did not reference the guidelines provisions that relate to departures. And its Statement of Reasons reported that it varied but did not depart. We conclude that the district court's sentence is an upward variance from the guidelines.

Thus, we need not address most of Defendant's arguments against imposition of an above-guidelines sentence, which relate only to departures. And insofar as Defendant is contending that the district court improperly *varied* upward in increasing his sentence, our response can be brief. For the reasons expressed by the district court—particularly Defendant's history of repeated criminal offenses—his sentence satisfied the reasonableness standard for substantive review of a sentence. *See United States v. Shaw*, 471 F.3d 1136, 1141 (10th Cir. 2006) ("[W]here the court concludes that the Guidelines inadequately reflect a defendant's criminal history or the seriousness of the offense, a deviation may be appropriate.") Defendant suggests that it was unreasonable for him to receive as long a sentence as Nixon when Nixon was a career offender while he was not. *See* 18 U.S.C. § 3553(a)(6) (sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). "But we have repeatedly explained that § 3553(a)(6) requires a judge to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations." *United States v. Damato,* 672 F.3d 832, 848 (10th Cir. 2012) (internal quotation marks omitted). And Defendant has compared his sentence only to Nixon's, not to comparable defendants nationwide. We note that in

*Shaw* we affirmed the district court's decision to increase the defendant's sentence 34 months above his guidelines range so that it was similar to what his codefendant received, even though his codefendant's criminal-history score qualified him for a higher guidelines range. *See Shaw* at 1140–41 ("[W]hile the Guidelines suggested dissimilar records, the [district] court concluded that, as a matter of fact, their records were quite similar and that the Guidelines had not adequately accounted for that similarity."). The district court in this case also reasonably believed that Defendant's criminal history was more serious than his guidelines range would indicate. By examining what Defendant's guideline sentence would be, the court implicitly compared his sentence to the sentences of defendants nationwide. *See Gantt*, 679 F.3d at 1248-49. We find no merit in Defendant's argument that it was unreasonable for him to receive as long a sentence as Nixon.

## III.   CONCLUSION

We AFFIRM the district court's sentence.