**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIA FRIDA VALDEZ-PEREA,

Defendant - Appellant.

No. 13-2056
(D.C. No. 1:11-CR-02868-LH-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

After a search of Maria Valdez-Perea's ("Ms. Valdez's") person revealed a package of heroin, she was indicted for possession with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Ms. Valdez filed a motion to suppress the evidence, alleging that the search was conducted without her voluntary consent and thus violated the Fourth Amendment. The district court denied the motion. Ms. Valdez subsequently pleaded guilty and sought a minor-role adjustment to her sentence pursuant to § 3B1.2 of the United States

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Sentencing Guidelines ("U.S.S.G." or "Guidelines").  The district court denied the adjustment.  Ms. Valdez now appeals on two grounds: that she never voluntarily consented to the search, and that the district court misapplied the Guidelines in refusing her the minor-role adjustment.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm**.

## I

On October 23, 2011, Special Agent Jarrell Perry of the United States Drug Enforcement Administration ("DEA") and Agent Dena Willatto of the New Mexico State Police conducted a plainclothes drug-interdiction operation at the Greyhound bus station in Albuquerque, New Mexico.[1]  The agents boarded a bus headed east from Los Angeles that had pulled into the station, and they began to speak with the passengers.  Agent Perry encountered Ms. Valdez, who was seated by a window near the rear of the bus, and, after establishing that she was a Spanish speaker, spoke to her in Spanish—a language in which he is proficient "enough to ask interdiction questions."  R., Vol. I, at 59 (Mem. Op. & Order, filed May 21, 2012).  He identified himself as a police officer and, in a

---

[1]  At the hearing on Ms. Valdez's motion to suppress, the district court found the testimony of Agents Perry and Willatto credible, whereas it found Ms. Valdez's testimony not credible.  We "accept the district court's findings of fact and credibility determinations unless clearly erroneous," *United States v. Benard*, 680 F.3d 1206, 1210 (10th Cir. 2012), and Ms. Valdez does not claim that the district court committed clear error in its credibility determinations.  Accordingly, the facts relating to the incident at issue are drawn from the district court's factual findings.

"conversational, cordial tone," *id.* at 60, asked Ms. Valdez about her itinerary and place of residence. He inquired whether he could see her ticket, to which she assented. He then asked for her identification papers, and Ms. Valdez silently handed them to him. Additionally, Ms. Valdez authorized a search of her purse and blanket. The encounter then proceeded as follows:

> Then [Agent Perry] asked, "May I search your person?" Although Defendant said nothing verbally, she nodded her head, then stood up from her window seat, moved into the aisle, and lifted her arms at a 90 degree angle from her body. Defendant faced the front of the bus while Agent Perry was behind her, so as not to block the pathway towards the door. Based on her actions, Agent Perry believed Defendant was giving him consent to search her person. Agent Perry started his pat-down search at her waist in the stomach area and then patted down her back near the waist area. He did not search Defendant's breast or groin areas. . . .
>
> Agent Perry observed that Defendant had on a tight-fitting body suit. He felt a hard bundle on Defendant's left side near her waist. Upon Agent Perry feeling the area with the bundle, Defendant immediately turned away and sat down.

*Id.*[2]

Agent Perry then asked Agent Willatto, who is female, whether she would conduct a search of Ms. Valdez. Together, the agents returned to where Ms.

---

[2] Ms. Valdez testified at the suppression hearing that she did not consent to the search, that she made no gestures with her head to authorize the search, and that Agent Perry touched her "private parts." R., Vol. III, at 52–53 (Tr. Suppression Hr'g, dated May 1, 2011). Because the district court discounted her testimony as non-credible, and because Ms. Valdez does not challenge that ruling on appeal, we do not rely on Ms. Valdez's account. *See United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 1569 (2014); *Benard*, 680 F.3d at 1210.

3

Valdez was seated, and Agent Perry again asked for consent to search her person. Again, Ms. Valdez stood up, stepped into the aisle, and raised her arms. Agent Willatto then searched her and discovered brown packaging tape—at which point Ms. Valdez pushed Agent Willatto's hand away. Ms. Valdez was then arrested based on the agents' "belie[f] [that] the hard objects [detected] were consistent with others containing illegal narcotics." *Id.* at 61. Subsequent testing revealed that she had been concealing 1.1 kilograms of heroin under her clothing.

Ms. Valdez was ultimately indicted for possessing with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). She filed a motion to suppress all the evidence seized from her, arguing that it was gathered in violation of her Fourth Amendment rights because she never voluntarily consented to the search. After a hearing, the district court denied Ms. Valdez's motion to suppress, reasoning that Ms. Valdez demonstrated consent by standing, stepping into the aisle, raising her arms, and nodding. The district court found no evidence that this consent was a product of coercion, emphasizing that Agent Perry displayed no weapons, used a cordial rather than commanding tone, returned each object after searching it, conducted the search in view of other citizens, and did not block the exits. The district court assigned "negligible weight" to the fact that Ms. Valdez was not informed that she could refuse to consent because she conceded at the suppression hearing that she understood that she had that option. R., Vol. I, at 65. As for Ms. Valdez's

4

gender, the district court found no reason to suppose it had affected the agents' behavior. Finally, the district court gave "little to no weight" to Ms. Valdez's national origin and alleged unfamiliarity with her constitutional rights because it found no evidence that Agent Perry "knew of her educational background or of any alleged unfamiliarity with her rights" and no "evidence that her citizenship influenced Agent Perry in any way, other than his speaking to her in Spanish." *Id.* at 66. Her motion having been denied, Ms. Valdez pleaded guilty while reserving her right to appeal the denial.

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office assigned Ms. Valdez a total offense level of twenty-eight, a criminal history category of I, and a resulting advisory Guidelines range of seventy-eight to ninety-seven months.[3] However, in light of the statutory minimum of ten years, *see* 21 U.S.C. § 841(a)(1); *id.* § 841(b)(1)(A), it recommended 120 months' imprisonment. In its offense-level computation, the PSR declined to recommend a mitigating-role adjustment under U.S.S.G. § 3B1.2. To explain that decision, the Probation Office emphasized that Ms. Valdez had purchased her own tickets, concealed a significant amount of heroin on her person, and transported drugs in the past, "suggesting a higher level of involvement and knowledge of the drug organization." R., Vol. II, at 5 (Second

---

[3] The PSR used the 2011 version of the Guidelines, and we accordingly do so as well.

5

Addendum to PSR, dated Dec. 14, 2012). "Overall," the Probation Office concluded, "there is not enough evidence to determine an aggravating or mitigating role." *Id.*

Ms. Valdez objected to the PSR's recommendation against a mitigating-role adjustment, noting that she had done nothing other than to carry the drugs with her. Given that fact, she urged the court to deem her a "minor participant" in the offense as defined by U.S.S.G. § 3B1.2(b) and to accordingly reduce her offense level by "at least two levels, if not three." R., Vol. I, at 72 (Objection to PSR, filed Dec. 14, 2012). The government opposed this adjustment, relying on the following four propositions: (1) Ms. Valdez made inconsistent statements to the authorities regarding her role in the organization; (2) she made multiple drug-running trips on behalf of the organization, suggesting that she had "a higher level of involvement and knowledge of the drug organization"; (3) Ms. Valdez confessed "to being reimbursed for most of her trips," indicating that "she clearly was in control of her travel and therefore had to be in contact with the drug trafficking organization more than she is admitting to or remembers"; and (4) the amount of drugs given to Ms. Valdez suggested "that the drug trafficking organization trusted her with a significant amount of their product." *Id.* at 79–80 (Resp. to Def.'s Objection to PSR, filed Dec. 21, 2012) (internal quotation marks omitted).

The district court overruled the objection. From its perspective, the issue

6

was "well-briefed, and . . . the government's position [was] correct"; thus, the court adopted the PSR's factual findings and Guidelines recommendations. *Id.*, Vol. III, at 91 (Sentencing Tr., dated Mar. 26, 2013).[4]  The district court then elected to disregard the statutory minimum, as authorized by the so-called "safety-valve" provision, 18 U.S.C. § 3553(f); *see United States v. A.B.*, 529 F.3d 1275, 1283–84 (10th Cir. 2008) (discussing the appropriate application of the "safety-valve" provision), and sentenced Ms. Valdez to seventy months in federal prison.  Ms. Valdez timely appealed.

## II

On appeal, Ms. Valdez challenges the district court's denial of her motion to suppress based on its conclusion that she voluntarily consented to the agents' search, as well as its denial of the minor-role adjustment at sentencing.  As explained below, the district court did not err in either regard.

## A

In reviewing the denial of Ms. Valdez's motion to suppress, we "view[ ] the evidence in the light most favorable to the government and uphold[ ] the district court's factual findings unless clearly erroneous." *United States v. Romero*, 749

---

[4]  The district court stated that it was denying "the defendant's request for a downward *departure*," R., Vol. III, at 91 (emphasis added), but it appears to have been referring to the request for a minor-role *adjustment*.  Ms. Valdez understands the comment in those terms, and our analysis proceeds based on this understanding.  While Ms. Valdez *did* separately file a motion for a downward variance, it is not relevant to the instant appeal.

F.3d 900, 903–04 (10th Cir. 2014) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000)) (internal quotation marks omitted). While Ms. Valdez urges that we must "review the district court's determination of the ultimate issue of voluntary consent *de novo*," Aplt. Reply Br. at 2, she supports this view with *Fifth Amendment* cases involving whether inculpatory statements were voluntary. *See* Aplt. Reply Br. at 1 (citing *United States v. Lamy*, 521 F.3d 1257 (10th Cir. 2008), and *United States v. Nguyen*, 155 F.3d 1219 (10th Cir. 1998)). In the *Fourth Amendment* search-and-seizure context, however, we have consistently maintained that "[w]hether consent was voluntarily given is a question of fact we review for clear error." *United States v. Harrison*, 639 F.3d 1273, 1277 (10th Cir. 2011); *accord United States v. Davis*, 636 F.3d 1281, 1292 (10th Cir. 2011); *United States v. Silva-Arzeta*, 602 F.3d 1208, 1213 (10th Cir. 2010).

We begin—and end—our analysis with the Supreme Court's decision in *United States v. Drayton*, 536 U.S. 194 (2002), which controls our resolution of Ms. Valdez's voluntariness claim. Ms. Valdez does not attempt to distinguish between the facts of her case and the facts of *Drayton*—nor could she. The defendants in *Drayton* were also traveling cross-country in a Greyhound bus when the bus made a scheduled stop at a station. *See* 536 U.S. at 197. Three officers—rather than the two here—then conducted virtually the same interdiction effort undertaken by Agents Perry and Willatto. Specifically, they did not

8

"obstruct[ ] the bus exit," *id.* at 198, and did not "brandish a weapon," *id.* at 204, but instead politely "asked the passengers about their travel plans," *id.* at 198, specifically asked the defendants for consent to search their personal effects, and then separately asked for consent to search their persons, *see id.* at 199. Like the agents in this case, the officers in *Drayton* also did not inform the defendants of their right to refuse the search request. *See id.* at 198. Further, while Ms. Valdez emphasizes that her consent was non-verbal, one of the defendants in *Drayton* also responded to the officer's search request silently "by lifting his hands about eight inches from his legs." *Id.* at 199.

Thus, under facts nearly identical to Ms. Valdez's case, the Supreme Court concluded that "[t]he respondents . . . were not seized and *their consent to the search was voluntary*." *Id.* at 200 (emphasis added).[5] While Ms. Valdez attempts to avoid *Drayton*'s authority by limiting her challenge to the voluntariness of the

---

[5]    At oral argument, Ms. Valdez's counsel asserted that *Drayton*'s consent-to-search holding should not apply to Ms. Valdez because, unlike the defendants in *Drayton*, she is foreign and therefore unlikely to be familiar with the practices of U.S. law enforcement. However, we may not categorically presume that national origin impacts the voluntariness of consent, and Ms. Valdez fails to argue how her national origin affected *her* consent in particular. *See United States v. Girolamo*, 23 F.3d 320, 327 (10th Cir. 1994) ("We [have] rejected . . . any rule that would classify groups of travelers according to gender, race, religion, national origin, or other comparable status, while recognizing that they may be relevant in a *particular* case to the extent that they are objectively apparent.").

search, rather than any alleged seizure,[6] this maneuver is flawed because *Drayton*'s analysis applies to the voluntariness of consent to be searched as well. The Court explicitly held that "[i]n circumstances such as these, where the question of voluntariness pervades both the search and seizure inquiries, the respective analyses turn on very similar facts. And, as the facts above suggest, respondents' consent to the search of their luggage and their persons was voluntary." *Id.* at 206; *see also United States v. Tapia*, 309 F.3d 1283, 1289 (10th Cir. 2002) (finding *Drayton* determinative of whether "proper consent [was] obtained" in the context of a similar drug interdiction on a Greyhound bus).

Ultimately, Ms. Valdez fails to persuade us that *Drayton* is distinguishable from her case, and its holding leads inexorably to the conclusion that the district court did not err in finding that her consent was voluntary.

**B**

Ms. Valdez also contends that the district court incorrectly construed the Guidelines by relying on her knowledge of the drug-running scheme to deny her a

---

[6] Although Ms. Valdez "maintains that she was seized when she was confronted by [Agent] Perry on the bus," she concedes that *Drayton* cuts against her on the seizure issue and asserts that her "appeal focuses on the search and not the seizure." Aplt. Opening Br. at 14. "Focuses" is a somewhat ambiguous term, and Ms. Valdez could be understood to suggest that she advances both a search and a seizure argument and simply devotes more attention to the former. However, given that she nowhere articulates a challenge to the constitutionality of any alleged seizure, and indeed, asserts that her citations to seizure caselaw are meant only to substantiate her involuntary-consent arguments, we perceive her challenge to be confined to the voluntariness of the search.

10

§ 3B1.2(b) mitigating-role adjustment for being a minor participant.  Ms.

Valdez's challenge is one of procedural unreasonableness, *see United States v.*

*Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008) (reviewing the denial of a

§ 3B1.2 minor-participant adjustment under the procedural-reasonableness

rubric), and, as such, we review "de novo the district court's legal conclusions

regarding the guidelines and its factual findings for clear error," *United States v.*

*Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012); *accord United States v. Mollner*,

643 F.3d 713, 714 (10th Cir. 2011).

The Guidelines instruct district courts to decrease an offense level by four

levels where "the defendant was a minimal participant in any criminal activity,"

U.S.S.G. § 3B1.2(a), by two levels where "the defendant was a minor

participant," *id.* § 3B1.2(b), and by three levels where the defendant falls between

the two, *see id.* § 3B1.2.[7]  As relevant here, two application notes clarify the

significance of these sentencing provisions.  The first explains that a "defendant's

lack of knowledge or understanding of the scope and structure of the enterprise

and of the activities of others is indicative of a role as minimal participant."  *Id.*

§ 3B1.2 cmt. n.4.  The second explains that a "minor participant" is one "who is

less culpable than most other participants, but whose role could not be described

---

[7]     Before the district court, Ms. Valdez asked for a reduction of "two levels, if not three."  R., Vol. I, at 72.  On appeal, her argument focuses only on the two-level minor-participant adjustment, so we do not analyze her eligibility for a three-level "in-between" adjustment.

as minimal." *Id.* § 3B1.2 cmt. n.5.[8]

Ms. Valdez's sentencing argument on appeal is a narrow one.  She faults the district court for impermissibly basing its § 3B1.2 ruling on "the level of [her] *knowledge* or understanding of the scope and structure of the drug enterprise," because, she claims, the application notes suggest that knowledge is only relevant to whether she is a *minimal* participant under the Guidelines, not to whether she is a *minor* participant.  Aplt. Opening Br. at 25.  This argument fails because, to the extent that the court relied on Ms. Valdez's knowledge,[9] it did not commit legal

---

[8]      "Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Boyd*, 721 F.3d 1259, 1261 (10th Cir.) (quoting *United States v. Nacchio*, 573 F.3d 1062, 1066–67 (10th Cir. 2009)) (internal quotation marks omitted), *cert. denied*, --- U.S. ----, 134 S. Ct. 630 (2013).  We have previously relied upon the application notes discussed above. *See, e.g.*, *United States v. Montoan-Herrera*, 351 F.3d 462, 465 (10th Cir. 2003).

[9]      Arguably, the district court's decision did not turn on Ms. Valdez's *knowledge*, per se, but rather on her active involvement in the drug operation. The court adopted the stance taken by the government, which rested on the following propositions: (1) Ms. Valdez made inconsistent statements to the authorities regarding her role in the organization; (2) she made multiple drug-running trips on behalf of the organization; (3) she confessed "to being reimbursed for most of her trips"; and (4) the amount of drugs given to Ms. Valdez suggested "that the drug trafficking organization trusted her with a significant amount of their product."  R., Vol. I, at 79–80.  While the government labeled these facts as evidence of Ms. Valdez's "knowledge," it also suggested that they indicated her "higher level of involvement" in the operation. *Id.*, Vol. II, at 5.  Indeed, her multiple, reimbursed, drug-running trips and the significant drug quantity involved clearly demonstrate the active role she played in the organization.  And Ms. Valdez never claims that personal involvement in the relevant criminal conduct is an illegitimate consideration in the minor-participant

(continued...)

12

error in doing so.

Ms. Valdez's argument is bereft of any citations to cases excluding knowledge from the minor-participant calculus, and indeed, the weight of authority is decidedly against her position. We have previously looked to a defendant's knowledge in determining whether an offense-level reduction under U.S.S.G. § 3B1.2 applies. *See, e.g.*, *Adams*, 751 F.3d at 1180 (finding the defendant's "knowledge of the scheme" to rob a bank relevant to the determination that he was not a minor participant); *United States v. Ayers*, 84 F.3d 382, 384 (10th Cir. 1996) (concluding that the defendant was not a minor participant where he "knowingly permitted [a codefendant] to use [his] apartment to sell drugs"); *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994) (noting that the PSR revealed that the defendant had "knowledge or understanding" of the drug enterprise and he was thus "not a minimal or *minor participant*" (emphasis added) (internal quotation marks omitted)).

Several of our sister circuits have similarly blessed the consideration of

---

[9](...continued)
analysis, nor could she plausibly do so. *See, e.g.*, *United States v. Adams*, 751 F.3d 1175, 1180 (10th Cir.) (noting the defendant's "involvement in the robbery" as a lookout was indicative that he was not a minor participant), *cert. denied*, --- U.S. ----, 135 S. Ct. 292 (2014); *United States v. Mendoza*, 468 F.3d 1256, 1264 (10th Cir. 2006) (affirming the denial of a minor-participant adjustment where evidence "indicated that [the defendant] was not fully disclosing his involvement"); *United States v. Jefferson*, 925 F.2d 1242, 1260 n.23 (10th Cir. 1991) ("[G]iven the evidence of his substantial involvement in the offenses, we do not find the district court's decision [denying the defendant a § 3B1.2 adjustment] to be clearly erroneous.").

knowledge as part of the minor-participant analysis. *See, e.g.*, *United States v. Pinkin*, 675 F.3d 1088, 1090 (8th Cir. 2012) (noting that a defendant "had extensive knowledge of the conspiracy" in explaining why "[t]he district court did not clearly err in denying . . . a minor participant role-in-the-offense reduction"); *United States v. Minutoli*, 374 F.3d 236, 238 (3d Cir. 2004) (affirming a sentence where the district court denied a minor-participant adjustment in part because of the defendant's "knowledge of . . . the nature and scope of the enterprise"); *United States v. Nguyen*, 255 F.3d 1335, 1345 (11th Cir. 2001) (finding that the district court did not err in relying on the defendant's "knowledge of the operation, coupled with his conduct," to conclude that "his role in the enterprise was not so minor as to warrant a[n adjustment] pursuant to § 3B1.2(b) of the Guidelines").

That Ms. Valdez cannot provide—nor can we locate—legal authority supporting the view that knowledge is not part of the minor-participant analysis is unsurprising given the tenuousness of her argument. Under the application notes, a "minor" participant is one whose role is not "minimal," U.S.S.G. § 3B1.2(b) cmt. n.5, and a "minimal" participant is one whose "lack of knowledge or understanding" renders him "plainly among the least culpable," *id.* § 3B1.2(b) cmt. n.4. The logical implication of the application notes is, therefore, that a minor participant is distinguished, in part, from a minimal participant based on his relative knowledge and understanding of the criminal operation.

14

"Knowledge" and "understanding" are not binary terms, but instead fall on a spectrum; a greater degree of ignorance might move one closer to the minimal-participation category, and a lesser degree of ignorance might move one closer to the minor-participation category. *See United States v. Maldonado-Campos*, 920 F.2d 714, 718 (10th Cir. 1990) ("[T]he terms 'minimal participant' and 'minor participant' are not too distant points along a continuum of moderate criminal participation.").

In sum, the district court did not err in denying the adjustment because it could permissibly rely on Ms. Valdez's knowledge of the drug organization.

**III**

Because we find no error in the district court's conclusions that Ms. Valdez voluntarily consented to a search of her person and that she was not a minor participant in the drug-running scheme, we hereby **AFFIRM** her conviction and sentence.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

15