**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERVARES DAMORA DAVIS,

Defendant - Appellant.

No. 19-6146
(D.C. No. 5:18-CR-00280-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Jervares Damora Davis pled guilty to being a felon in possession of a firearm

under 18 U.S.C. § 922(g)(1).  The district court sentenced him to serve 100 months in

prison, 13 months above the United States Sentencing Guidelines advisory range.

Mr. Davis argues on appeal that the sentence was procedurally and substantively

unreasonable.  We conclude that Mr. Davis waived his procedural challenge and that

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

he has not shown the sentence is substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we therefore affirm.

## I. BACKGROUND

### A. *Factual Background*

In 2013, Mr. Davis pled guilty in an unrelated case to being a felon in possession of a firearm and received a 66-month prison sentence and a three-year term of supervised release, which he started in June 2018.

In October 2018, Mr. Davis went to a nightclub with his girlfriend, Brooke Waugh. He belonged to the Sunnyside Blood gang. Members of a rival gang—the 107 Hoover Crips—were also at the club. One of the Crips told police that Mr. Davis was staring at them and that "they were both throwing up" gang signs in the club. ROA, Vol. 2, at 13.

Mr. Davis and Ms. Waugh left the club shortly before 2:00 a.m. The Crips were outside. With Mr. Davis in the passenger seat, Ms. Waugh initially drove past the Crips. She told police that Mr. Davis asked her to turn around so that he could talk to some "homies." ROA, Vol. 2, at 12. She also said that when she circled back toward the club, a group started shooting at them, causing Mr. Davis to pull out a gun and shoot back.

During the shootout, Ms. Waugh crashed her car. Although she was shot in the back, chest, and neck, she survived. She told police that after the crash, Mr. Davis threw his gun and ran over to her. Police found Mr. Davis's gun at the scene. In the gun's chamber, they discovered a round showing a primer strike,

2

suggesting to police that someone had unsuccessfully tried to fire the gun. The police did not find any evidence that Mr. Davis successfully fired the gun that night.

## B. *Procedural Background*

Mr. Davis was indicted on one count of being a felon in possession of a firearm. But after authorities learned that he tried to get Ms. Waugh's mother to disavow statements she had made to police, a superseding indictment added a witness-tampering count under 18 U.S.C. § 1512(b)(1). Mr. Davis ultimately pled guilty to being a felon in possession of a firearm. The Presentence Investigation Report (PSR) calculated an offense level of 25 and a criminal history category of IV, yielding an advisory Guidelines range of 84 to 105 months.

At the sentencing hearing, the Government presented testimony from a detective and from an inmate who had been housed in a jail pod with Mr. Davis. The inmate claimed that Mr. Davis told him that he "got into it" with some Crips, "let off with his pistol," and "threw the gun when people showed up." ROA, Vol. 3, at 58. The Government also presented surveillance footage of the shooting, still photos from surveillance cameras, and audio recordings of phone calls that Mr. Davis made from jail.

After hearing the evidence, the district court sustained Mr. Davis's objection to the PSR's conclusion that the offense involved more than minimal planning, reducing the offense level to 23 and rendering a Guidelines range of 70 to 87 months. The court then sentenced Mr. Davis to serve 100 months in prison followed by three years of supervised release, stating,

3

> Based on all that I've heard here today, my primary concern is the protection of the public. And given your conduct in this case, given it's—the recency from which you are released from prison and there you are at 2:00 in the morning with a .40-caliber gun and get in a gunfight, I just consider that the public needs to be protected from that kind of conduct.

ROA, Vol. 3, at 84.

Mr. Davis appeals, contending that his sentence is procedurally and substantively unreasonable.

## II. **DISCUSSION**

Appellate review of a sentence's reasonableness has two components, one procedural and the other substantive. *United States v. Adams*, 751 F.3d 1175, 1181 (10th Cir. 2014); *see Gall v. United States*, 552 U.S. 38, 51 (2007). "The procedural component concerns how the district court calculated and explained the sentence, whereas the substantive component concerns whether the length of the sentence is reasonable in light of the statutory factors under 18 U.S.C. § 3553(a)." *Adams*, 751 F.3d at 1181. Mr. Davis challenges both the procedural and substantive reasonableness of his sentence.

### A. *Procedural Reasonableness*

Mr. Davis argues that the district court did not adequately (1) explain the reasons for its sentence or (2) address his arguments for a sentence within the Guidelines range. The Government argues that we should not consider Mr. Davis's procedural claim because he waived the right to appeal the sentencing procedure as

part of his plea agreement. Mr. Davis neither addressed waiver in his opening brief nor filed a reply brief to respond to the Government's waiver argument.

An appeal waiver's enforceability is a legal question that we review de novo. *United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 (10th Cir. 2008). To decide whether to enforce a plea agreement's appeal waiver, we consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). Our review of the record convinces us that Mr. Davis's appeal waiver forecloses his procedural argument.

First, his procedural challenge falls within the scope of his appeal waiver. He waived "the right to appeal [his] sentence" and "the manner in which the sentence [was] determined" except he retained the right to appeal "specifically the substantive reasonableness" of his sentence if it exceeded the Guidelines range. ROA, Vol. 1, at 24-25.

Second, the record shows that Mr. Davis's appeal waiver was knowing and voluntary. On this question, we typically focus on (1) whether the plea agreement states that the defendant entered into it knowingly and voluntarily, and (2) whether the district court conducted an adequate colloquy under Federal Rule of Criminal Procedure 11. *Hahn*, 359 F.3d at 1325. The plea agreement here asserts that

5

Mr. Davis's waiver was knowing and voluntary. And the district court's plea colloquy specifically addressed the appeal waiver.

Third, Mr. Davis has not even attempted to establish one of the four circumstances that would allow us to conclude that enforcing his appeal waiver would cause a miscarriage of justice. *See id.* at 1327 (holding that enforcing an appeal waiver causes a miscarriage of justice only when (1) the district court relied on an impermissible factor such as race, (2) ineffective assistance of counsel in negotiating the waiver renders it invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful).

For these reasons, we enforce Mr. Davis's appeal waiver and do not address the merits of his procedural challenge.

B. *Substantive Reasonableness*

As to his sentence's substance, Mr. Davis contends the district court abused its discretion by placing too much emphasis on protecting the public, resulting in an unreasonably excessive prison term. We disagree.

A substantive-reasonableness challenge calls on us to determine whether a sentence's length is reasonable considering all the circumstances of the case and the factors set out in § 3553(a). *United States v. Durham*, 902 F.3d 1180, 1238 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 849 (2019). Section 3553(a)'s factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for a sentence to reflect the crime's seriousness, to deter future crimes, to prevent the defendant from committing more crimes, and to provide

6

rehabilitation; the legally available sentences; the Sentencing Guidelines; the Sentencing Commission's policy statements; the need to avoid unwarranted sentence disparities; and the need for restitution. *See* 18 U.S.C. § 3553(a); *United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018). "[T]hese factors do not necessarily bear equal weight, and the district court" must perform "the delicate task of balancing these factors." *United States v. Walker*, 844 F.3d 1253, 1259 (10th Cir. 2017).

We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. This standard requires us to "recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). "And there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing." *Id.* at 1053–54. That is because a district court "has an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance under § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008). With these principles in mind, "we deem a sentence unreasonable only if it is 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012) (quoting *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009)).

In our view, the record refutes Mr. Davis's argument that the district court did not properly weigh other factors against the need to protect the public. At the sentencing hearing, the district court identified "the protection of the public" as its "primary concern." ROA, Vol. 3, at 84. But it also noted that it had considered the PSR, Mr. Davis's statement, defense counsel's statement, the sentencing memoranda, the Sentencing Guidelines, and the factors in § 3553(a). And in its written statement of reasons, the court noted the following § 3553(a) factors supporting its decision to vary from the Guidelines range: the nature and circumstances of the offense; the history and characteristics of Mr. Davis; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; as well as the need to protect the public. The court also factored in "the recency of the instant offense in proximity to [Mr. Davis's] release from imprisonment on his previous firearm offense." ROA, Vol. 2, at 64.

Given all the circumstances—including the danger that the confrontation created, the witness-tampering allegations, and Mr. Davis's recent release from prison for the same offense—we cannot conclude that the district court's 100-month sentence, 13 months above the Guidelines range, was not a rationally available choice. *See United States v. Garcia*, 946 F.3d 1191, 1211-15 (10th Cir. 2020) (finding substantively reasonable the defendant's ninety-six-month sentence, thirty-nine months greater than the top of the Guidelines range, for being a felon in possession of a firearm). In sum, Mr. Davis's sentence is substantively reasonable.

## III.  **CONCLUSION**

We affirm the district court's sentence.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge