FILED
United States Court of Appeals
Tenth Circuit

May 30, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DESHANE GANTT,

Defendant - Appellant.

No. 11-3127

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 6:10-CR-10175-MLB-1)**

---

John K. Henderson, Jr., Assistant Federal Public Defender, Wichita, Kansas, for Defendant - Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff - Appellee.

---

Before **HARTZ**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

Defendant Deshane Gantt pleaded guilty in the United States District Court for the District of Kansas to brandishing a firearm during a crime of violence, *see* 18 U.S.C. § 924(c)(1), and received a sentence of 20 years' imprisonment. He

appeals his sentence, arguing that it was both procedurally and substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Defendant's sentence was procedurally reasonable because the district court adequately explained why it varied from the guideline sentence, and it was substantively reasonable because the length of the sentence was not an abuse of discretion.

## I.    BACKGROUND

On November 8, 2010, Christopher Crabtree drove Defendant to the Catholic Family Federal Credit Union in Wichita, Kansas, to commit an armed robbery. Upon entering the credit union alone, Defendant ordered the employees to the floor while brandishing a 9-millimeter pistol, saying: "This is a robbery . . . I don't want to turn this into a homicide." R., Vol. 1 at 20. He then removed $7,803 from the teller drawers and fled on foot to his home. There, as previously arranged, Crabtree met him to drive him from his home so he would not be discovered there with the money. They hid the stolen cash in a pillow case under Defendant's seat. Soon, however, they were stopped by a police officer for failing to stop at a stop sign. The officer, aware that the car and its occupants resembled what witnesses to the robbery had observed, asked to search the car. Crabtree consented and the officer found the money in the pillowcase.

A grand jury indicted Defendant on three counts: bank robbery, brandishing a firearm during a crime of violence, and being a felon in possession

of a firearm. Under a plea agreement he pleaded guilty to the second count. In return the government dismissed the other two counts and agreed to recommend a sentence "at the low end of the applicable guideline range." *Id.* at 22. For a violation of § 924(c), however, the Sentencing Guidelines do not provide a guideline sentencing *range* but only a guideline sentence, which is the statutory mandatory minimum. *See* USSG § 2K2.4(b) (stating that, absent an exception not pertinent to this case, "if the defendant, whether or not convicted of another crime, was convicted of violating section 924(c) . . . , the guideline sentence is the minimum term of imprisonment required by statute"). For brandishing a firearm, that minimum is seven years, to be served consecutively to any other sentence. *See* 18 U.S.C. 924(c)(1)(A)(ii), (D)(ii). A note to the guideline provision states: "A departure may be warranted . . . to reflect the seriousness of the defendant's criminal history in a case in which the defendant is convicted of an 18 U.S.C. § 924(c) . . . offense but is not determined to be a career offender under [USSG] § 4B1.1." USSG § 2K2.4 cmt. n.2(B).

The probation office's presentence report, to which no objection was made by Defendant or the government, described the robbery and Defendant's criminal background. He had been adjudicated a juvenile offender on four occasions, including a 2006 adjudication for possessing a firearm when he was 17. In 2008 he pleaded guilty as an adult to aggravated battery, an offense involving his shooting a gun. He was initially placed on probation but ultimately was

incarcerated about five months in prison after violating the terms of his probation. He was released from prison a year before the credit-union robbery.

Before the sentencing hearing on April 18, 2011, defense counsel submitted a sentencing memorandum trying to explain Defendant's fall from grace, together with letters from Defendant's father and an ex-girlfriend. At the hearing itself the district court heard statements from several persons. Three credit-union witnesses spoke to the robbery's impact on employees. A former high-school teacher said that Defendant had been an outstanding student, a leader well-liked by his peers and the staff, and a member of his class chosen to give a graduation speech. His father and mother, married for 29 years, also spoke. His mother told of her special bond with Defendant and said that he would be the next Will Smith (a famous entertainer). His father, a retired police officer, described his 22-year-old son as someone willing to take on many responsibilities and as the glue among his siblings, who included one son who had graduated from college and others in college. Finally, Defendant himself spoke, stating that he was "a regular person who makes mistakes." R., Vol. 3 at 22.

The district court then explained the thinking behind the sentence it proposed to give. It began: "Well, this is not a sentencing guideline case. There's a mandatory minimum sentence of ten years—seven years. A life sentence is the maximum sentence. So I can sentence anywhere from seven years to life." *Id.* at 23. It next discussed the sentencing factors in 18 U.S.C.

§ 3553(a), noting the seriousness of Defendant's offense and his prior record, and expressing bewilderment at why he had turned out as he had. Emphasizing the need to protect the public, the court imposed a sentence of 20 years' imprisonment and three years' supervised release.

After Defendant said that he had no questions, defense counsel interrupted to correct the court's statement that there was no applicable guideline in the case. He pointed out that "the guideline sentence would be the mandatory minimum of seven years." *Id.* at 29. The court responded: "Well, I meant to say—I'm sorry—that there's no criminal history calculation in the case. But the sentence is still—an authorized sentence is still seven years to life. You agree with that?" *Id.* Counsel indicated that he agreed, but said that he had not received notice of the court's contemplated "departure" from the guidelines. *Id.* The court said that it would continue the sentencing hearing for a week. When defense counsel repeated that the guideline sentence was seven years, the court said: "Well, I'm not sure I agree with that; but if in fact that is the guideline sentence, 84 months, then you are notified here today that I consider that sentence to be woefully inadequate." *Id.* at 30. It added that it would read anything submitted by counsel, "but he'll never get a seven year sentence from me. So, that's just the way it is." *Id.* at 31.

Before the second hearing Defendant filed a motion and supplemental memorandum arguing (1) that the district court must consider the guideline

sentence of seven years' imprisonment; (2) that a 20-year sentence would create an "unwarranted disparity in sentencing between [Defendant] and [Crabtree] and others similarly situated," R., Vol. 1 at 41, although the motion's brief discussion of disparity compared Defendant's sentence only to Crabtree's; (3) that there were no facts in this case that took it out of the heartland of bank-robbery cases involving a firearm; (4) that the court should take into account that Defendant's prior conviction for aggravated battery was for an act of self-protection; and (5) that Defendant's history and characteristics did not justify an upward departure or variance.

At the second hearing the district court acknowledged that counsel was correct about the seven-year guideline sentence and then explained that "the sentence that I imposed last week and the sentence that I think is a correct sentence is a variance from the guideline sentence." *Id.* at 32. It said that it thought it had made an adequate record of the reasons for the sentence at the first hearing, but invited additional arguments. Defense counsel stated:

> Your Honor, I don't have anything to add to our briefs or memorandum. I shared with the Court our arguments and position in the hopes that the Court would sentence, with reference to the guideline, consider a lower sentence. I understood the Court's perspective at the time of sentencing was focusing on a range of 7 to life, and with the focus on the guideline at 7 and then considering a variance above it. As we expressed in the papers, we would ask the Court to reconsider.

*Id.* at 33–34. Defendant said that he had nothing to add.

-6-

The court declined to modify its sentence. It spoke at some length, expressing its concern about the seriousness of Defendant's criminal history and the need to protect the public:

> I've looked back over this case, and in particular, the materials that [defense counsel] has provided. I read the police reports. And there's just no—there's no getting around what happened here. The presentence report demonstrates, it's not been objected to, that Mr. Gantt at age 17 was adjudicated a juvenile because he had criminal possession of a firearm. And a year later at age 18 he's involved in this shooting[, which led to his conviction for aggravated battery]. And the thing that bothers me about the shooting is not, you know, it's one thing to go out and want to have a fist fight with somebody you don't like. I don't see anything really terrible about that. We ought to settle our arguments some other way, but having a fist fight probably is as good a way as any in some of these situations. But that's not what happened. Mr. Gantt got ahold of a firearm, he fired five indiscriminate shots at the other person involved in the fight, hit him twice. Could have killed him, Mr. Gantt. I mean, just shooting indiscriminately, you know, people could get killed. He got a sentence over in state court that, frankly, I don't see how these sentences really teach anybody anything, but I'm not a state court judge, but 14 months with twelve months post release supervision, suspended and placed on probation. Well, there's your chance, Mr. Gantt. You got put on probation for shooting somebody. Yet you violated probation, and then they revoked it and reinstated it. I don't know what the new conditions were that were imposed on you, but whatever they were, you violated those again. And you got, finally, in the State of Kansas way of doing things, you finally got sent to the penitentiary where you served a relatively short sentence, as near as I can tell, from May to November of 2009. And then a year later you're at the credit union with a gun threatening to kill people and robbing them. Doesn't look to me like you've learned anything from being in the state system. And I think the purpose of a variance is the same thing I said last week. I don't feel any different this week. The public has to be protected from this sort of behavior.

*Id.* at 34–36.

On appeal Defendant asserts that his sentence was procedurally and substantively unreasonable. The alleged procedural errors were (1) that the district court violated the procedural requirements for a sentencing departure; (2) that it did not properly consider the applicable guideline provision even after it realized that the guideline sentence was only seven years; (3) that it did not consider the need to avoid unwarranted sentencing disparities; and (4) that it failed to take into account certain facts and circumstances regarding Defendant's prior conviction for aggravated battery. Defendant argues that his sentence was substantively unreasonable because no one has ever received so harsh a sentence for the same crime.

## II. DISCUSSION

### A. Procedural Reasonableness

When a party challenges a sentence for procedural reasonableness, our standard of review is ordinarily abuse of discretion, under which we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error. *See United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011). If, however, Defendant did not preserve the procedural challenge below, we review only for plain error. Defendant can obtain relief under the plain-error doctrine only if four requirements are satisfied: (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial

rights; and (4) "the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005). Because all four requirements must be met, the failure of any one will foreclose relief and the others need not be addressed. *See United States v. Hall*, 625 F.3d 673, 684 (10th Cir. 2010). As we shall see, none of Defendant's alleged procedural errors can survive the first requirement because the district court did not commit error.

We now turn to Defendant's particular claims of procedural unreasonableness.

### 1. Failure to Follow Requirements for a Departure

Defendant challenges his sentence on several grounds relating to the district court's failure to comply with the strict requirements imposed on departures from a guideline sentence. He argues that his sentence was procedurally unreasonable (1) because the court did not tie it to any departure provision under the guidelines, *see United States v. Robertson*, 568 F.3d 1203, 1211 (10th Cir. 2009) (departure must be based on "permissible departure factors"); (2) because the court did not explain "why [Defendant's case] stood out from the heartland of cases involving § 924(c) brandishing represented by the Guideline sentence of seven years," Aplt. Br. at 22, *see United States v. Osborne,* 593 F.3d 1149, 153–54 (10th Cir. 2010) (the district court should justify a departure by determining the heartland of cases covered by the applicable guidelines and

explaining why the case falls outside that heartland); and (3) because the court did not explain its methodology for arriving at a sentence of 20 years, *see United States v. Nunemacher*, 362 F.3d 682, 691 (10th Cir. 2004) ("District courts are supposed to give some rationale *tied to the Guidelines* for the degree of departure *in the specific case*.").

We review these claims for plain error because they were not preserved below. Although Defendant's supplemental sentencing memorandum had argued against a departure, Defendant's complaint on appeal is not that the court rejected his arguments but that the court did not adequately *explain* why it acted as it did. To preserve that complaint for appeal, Defendant needed to alert the court that its explanation was inadequate, which ordinarily would require an objection after the court had rendered sentence. The court could then cure any error by offering the necessary explanation. We do not abide appeals of alleged errors that could have been easily avoided by a timely objection. *See United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006) ("an objection that the sentencing court had not adequately explained the sentence . . . would have enabled the court either to correct a failure to consider those factors or to state affirmatively that the factors had been considered").

This case is readily distinguishable from *United States v. Lopez-Avila*, 665 F.3d 1216, 1218 (10th Cir. 2011), where the defendant appealed his sentence on the ground that the district court had refused to consider granting a variance

because of sentencing disparities caused by the unavailability of fast-track procedures in Colorado. The defendant had moved for such a variance in a motion filed before the sentencing hearing. After full briefing and argument the district court said at the hearing that such a variance would be improper. It then imposed sentence. We ruled that it was unnecessary for the defendant to object after sentencing that the court had not considered a fast-track variance. No purpose would have been served by such an objection. All the court could have done in response is to repeat that it had rejected the variance argument; and preservation doctrine does not require a party to ask a court to reconsider a definitive ruling, *see, e.g.*, *United States v. Campos*, 221 F.3d 1143, 1146–47 & n.1 (10th Cir. 2000) (not necessary to renew at trial a motion to suppress denied pretrial).

In any event, the district court did not commit error. It declared that its sentence was a *variance* from a guidelines sentence, so the rules regarding *departures* were inapplicable. A departure from a guideline sentence is a sentence outside the guideline range but justified by specific provisions in the guidelines. *See Osborne*, 593 F.3d at 1152–53. For example, a comment to USSG § 2K2.4, which established Defendant's guideline sentence, states that an upward departure is warranted if the defendant has a particularly serious criminal history. *See* USSG § 2K2.4 cmt. n.2(B). In contrast, a sentence variance is a sentence not authorized by the Sentencing Guidelines but permissible now that

the guidelines are merely advisory. The case law relied on by Defendant is distinguishable because it all relates to departures *under* the guidelines, not variances *from* the guidelines. A variance can be imposed without compliance with the rigorous requirements for departures. *See United State v. Martinez-Barragan*, 545 F.3d 894, 901 (10th Cir. 2008) ("Now that the Sentencing Guidelines are only advisory, there are no mandatory requirements as to when a district court may sentence a defendant to an above- or below-Guidelines sentence."). We therefore need address only Defendant's three procedural issues that concern a variance.

### 2.    Consideration of the Guideline Sentence

The sentencing court must give consideration to the applicable guideline sentence. *See Gall v. United States*, 552 U.S. 38, 49–50 & n.6 (2007). Defendant contends that the district court failed in this regard, asserting: "At no time in the second hearing did the Court begin again and resentence [Defendant] under the Guidelines, case law and statutes. At no time in the first or second hearing did the Court meaningfully consider the guideline sentence of seven years." Aplt. Br. at 19.

Again we review for plain error. True, at the first hearing Defendant alerted the district court that there was a recommended guideline sentence for his offense. But at the second hearing Defendant did not complain after the imposition of sentence that the court had failed to address that guideline

explicitly.  Thus, Defendant did not preserve this claim of error by raising an objection at the proper time, when an error could have readily been cured.

And again Defendant's claim cannot survive plain-error review because there was no error.  The record shows that at the second hearing the district court expressly acknowledged that the guideline sentence was seven years and that it was "supposed to give respectful consideration to the guidelines[.]"  R., Vol. 3 at 33.  But, it explained, the guidelines are not mandatory and a variance from the guideline sentence was important in this case.  The court could hardly have been clearer that it had considered the advisory guideline sentence.  To consider is not necessarily to adopt.

### 3.    Unwarranted Disparity

Defendant next contends that the district court failed to address sentencing disparities under 18 U.S.C. § 3553(a)(6), which directs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Unfortunately for Defendant, what he argues on appeal is not what he argued in district court.  The disparity that he complained of to the district court was the disparity between his sentence and the sentence received by his accomplice Crabtree.  But he does not repeat that complaint on appeal, pointing instead to the disparity between his sentence and the sentences of others convicted of the same offense throughout the country.  To be sure, Defendant's supplemental memorandum submitted before

the second sentencing hearing said, "The [20-year] sentence creates unwarranted disparity in sentencing between [Defendant] and the co-defendant and others similarly situated." R., Vol. I at 41. But there was no further discussion of "others similarly situated," and neither Defendant nor his counsel complained at the sentencing hearing that the court had not considered the issue. An unelaborated snippet cannot preserve an issue for appeal. *See United States v. Morris*, 562 F.3d 1131, 1133 (10th Cir. 2009). Thus, we review this newly raised argument for plain error.

Once more, Defendant cannot satisfy the first requirement of plain-error review, showing error by the district court. Defendant contends that there is a disparity between his sentence and the sentences of others convicted of violating 18 U.S.C. § 924(c)(1), and that the district court did not consider the disparity. But his assertion that his sentence deviated from most sentences imposed on persons with the same criminal history who committed the same offense is based on the presumption that ordinarily such persons receive a guidelines sentence. This is a reasonable presumption, but his argument therefore amounts to saying that the district court did not consider that it was imposing a nonguidelines sentence, a sentence different from what is usually imposed for the offense. The argument fails because the court clearly considered that the sentence was far from a guidelines sentence. Indeed, one can say as a general rule that when a court considers what the guidelines sentence (or sentencing range) is, it necessarily

considers whether there is a disparity between the defendant's sentence and the sentences imposed on others for the same offense. The Supreme Court recognized this in *Gall*, 552 U.S. at 54, writing: "As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *See United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no unwarranted disparity between [the defendant] and other offenders convicted of similar frauds." (internal quotation marks omitted)).

Also, insofar as Defendant complains that the district court did not *explain* the basis for the disparity between his sentence and the sentences of others convicted of the same offense, we hold that the court's explanation of the sentence sufficed. *See United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006) ("The sentencing court . . . is not required to . . . recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." (internal quotation marks omitted)); *United States v. Pinson*, 542 F.3d 822, 833–35 (10th Cir. 2008) (Even when the sentencing court varies from the guidelines, it need not explicitly discuss each of

-15-

the § 3553(a) factors. Only when a party raises a material, nonfrivolous argument regarding a factor does procedural reasonableness require a response from the court.).

### 4. Failure to Take into Account Certain Facts in Defendant's Criminal History

As his final procedural claim, Defendant argues that the district court failed to take into account that his prior aggravated-battery conviction was for an act of self-defense. He asserts that the conviction was for a shooting during what had been a fist fight when "he was jumped by three additional men." Aplt. Br. at 25. We need not concern ourselves with whether this issue was preserved below, because it has no merit. Defendant was convicted, not acquitted, of aggravated battery, and it was reasonable for the court to read the police reports as showing conduct that fit into a pattern of criminal behavior involving the use of firearms. We see no abuse of discretion.

### B. Substantive Reasonableness

Defendant's substantive-reasonableness claim is that the length of his sentence was excessive "given all the circumstances of the case in light of the factors set forth in § 3553(a)." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (brackets and internal quotation marks omitted). Under a deferential abuse-of-discretion standard, we deem a sentence unreasonable only if it is

-16-

"arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (internal quotation marks omitted).

Defendant argues that his sentence was substantively unreasonable because no one has ever received such a long sentence for brandishing a firearm under 18 U.S.C. § 924(c). He relies on the statement in *United States v. O'Brien*, 130 S. Ct. 2169, 2177 (2010), "that most courts impose the mandatory minimum of 7 years' imprisonment for brandishing a nonspecific weapon and the longest sentence that has come to the litigants' or the Court's attention is 14 years." This statement, however, must be read in context. *O'Brien* was not a substantive-unreasonableness case. Its holding was that under 18 U.S.C. § 924(c), "the fact that the firearm was a machinegun is an element to be proved to the jury beyond a reasonable doubt[, not] a sentencing factor to be proved to the judge at sentencing." *Id.* at 2172. The Court's reference to typical sentences for brandishing was to emphasize that proof that the firearm was a machinegun—which mandated a sentence of at least 30 years—would substantially increase the actual sentence received. *See id.* at 2177–78. The *O'Brien* Court had no occasion to examine the substantive reasonableness of the sentence in the case before it or to examine in detail the sentences imposed on defendants convicted of brandishing. As we next proceed to discuss, when one examines the data presented to the Supreme Court through the lens of substantive

reasonableness, the data take on a different cast and they support, rather than undermine, the sentence in this case.

The issue presented to us is whether the sentence imposed on Defendant was unreasonably long in light of his criminal misconduct, criminal history, and the other § 3553(a) factors. In conducting this examination it is essential to keep in mind that the "nature and circumstances of the offense" committed by a defendant, 18 U.S.C. § 3553(a)(1), can include more than the offense of which he was convicted. The Sentencing Guidelines, which are designed to reflect the considerations set forth in § 3553(a), *see Rita v. United States*, 551 U.S. 338, 347–48 (2007), ordinarily require that the defendant's base offense level be derived not only from the offense of conviction but from "all acts . . . that occurred during the commission of the offense of conviction." USSG § 1B1.3(a)(1). (The peculiarity of the guideline for brandishing a firearm, USSG § 2K2.4(b), in that it sets the guideline sentence regardless of what else the defendant was convicted of, presumably derives from the statutory requirement that the brandishing sentence be served consecutively to any other sentence. *See* 18 U.S.C. § 924(c)(1)(D)(ii).) Here, Defendant was convicted of brandishing, but the brandishing was not an isolated act; Defendant brandished his gun during the course of an armed robbery of a federal credit union. Accordingly, for the purpose of assessing substantive reasonableness we can compare Defendant's 20-year sentence to sentences imposed on others who have brandished a firearm

while committing a robbery. We have reviewed the cases cited by the respondent's brief in *O'Brien*, on which the Supreme Court relied for its sentencing data on brandishing. *See* Br. for Resp't O'Brien, *United States v. O'Brien*, No. 08-1569, 2010 WL 181571, at *46–*47 (Jan. 14, 2010). In almost all of them the defendant was convicted of both robbery and brandishing a firearm; and the *total* length of those sentences ranged widely, from 117 months (a little less than 10 years), *see United States v. Beaudion*, 416 F.3d 965, 967, 970 (9th Cir. 2005) (the sentence was vacated only because the district court had operated under the assumption that the Guidelines were mandatory), to life imprisonment, *see United States v. Gomez*, 302 Fed. App'x 868, 869 (11th Cir. 2008) (20 years for the counts of Hobbs Act robbery). The 20-year sentence for Defendant falls well within this range. Thus, the *O'Brien* data do not show Defendant's sentence to be substantively unreasonable.

And when we examine the sentence here, we must conclude that its length was not arbitrary or otherwise unreasonable. The district court noted the seriousness of the offense, Defendant's recidivism in using firearms, and the need to protect the public. In these circumstances, the 20-year sentence was within the range of reasonableness.

## III.   CONCLUSION

We AFFIRM Defendant's sentence.