**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

JAMES CHAPMAN,

       Defendant – Appellant.

No. 14-1268
(D.C. No. 1:13-CR-00224-WJM-1)
D. Colorado

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and Appellant, James Chapman, appeals the forty-six month sentence imposed following his plea of guilty to being a felon in possession of a

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

firearm, in violation of 18 U.S.C. § 922(g)(1).  After concluding that his sentence is substantively reasonable, we affirm that sentence.

**BACKGROUND**

Mr. Chapman's undeniably sad and troubled life included his witnessing of his mother's rape and murder by a gang when he was seven years old.  Following that incident, he began experiencing nightmares and mental health problems, which have continued throughout his life.

At the age of eighteen, Mr. Chapman was arrested and convicted for receiving stolen property.  He was sentenced to nine months in jail, followed by three years of probation.  When he got out of jail, Mr. Chapman began receiving mental health treatment for the first time.  Doctors at the Compton, California Family Mental Health Services diagnosed him with "schizophrenia, paranoid type, accompanied by distorted thought, sense of self, and volition."  Appellant's Br. at 3.  He was prescribed medications for those diagnoses.  At some point during the following year, he attempted suicide by overdosing on pills.

At the age of nineteen, Mr. Chapman first sought to receive disability payments from the Social Security Administration, on the ground that his mental illness rendered him unable to maintain a job.  He was initially denied disability payments.

When Mr. Chapman was twenty-one, he was arrested and convicted of possession of marijuana for sale.  He was sentenced to a year in jail.  Shortly after

his release from jail, Mr. Chapman was arrested and convicted of two counts of second-degree robbery, for which he received a sentence of nine years in prison. While in prison, Mr. Chapman received psychotropic medication. Additionally, while in prison, he was convicted of possession of marijuana.

Mr. Chapman was released from prison in 2006, at the age of thirty-one. He was again denied Social Security disability benefits. He was then arrested and convicted of second-degree burglary, for which he received a sentence of thirty-two months' imprisonment. When he displayed psychotic symptoms in prison, he was diagnosed with a major mental illness and treated.

In July 2009, Mr. Chapman was finally deemed to be qualified to receive Social Security disability benefits because of severe impairment caused by "schizophrenia with audio hallucinations, explosive disorder, and likely borderline personality disorder." Appellant's Br. at 5. The Administrative Law Judge found that Mr. Chapman's disability had existed since June 1, 1996.

In the months following this decision, Mr. Chapman sustained three more convictions: one for driving under the influence and two for driving with a suspended license. He was sentenced to a total of seven months in jail and was released in late 2011 or early 2012.

Mr. Chapman was continuing to receive psychiatric medications at this point in time. When his grandmother (with whom he lived) suffered a stroke in California, Mr. Chapman moved to Denver, Colorado, to live with a girlfriend

with whom he had an eighteen-year relationship, which included an eighteen-year-old daughter.

After his move to Denver, Mr. Chapman made an appointment with a state mental health agency to continue his treatment and medications. Because of a delay in getting an appointment, Mr. Chapman's mental health medications had run out by May 12, 2013, and he apparently began experiencing hallucinations. The conduct underlying the instant conviction occurred on the next day, May 13, 2013. As described by the district court, the following happened:

> [O]n May 13th, 2013, at approximately 10:20 p.m., two Aurora Colorado police officers were dispatched to the Bona Vista Manor Apartments in Aurora in response to a call from the complex manager, Candy Maes.
>
> Ms. Maes stated that she had seen a man continuously trespassing in the apartment complex and she believed that this individual might be involved with drugs or a gang.
>
> Through the window at the complex Ms. Maes had indicated that the door had been propped open adjacent to the parking area in the courtyard, and then noticed a man in that area, pointed him out to officers and stated she believed him to be the same man.
>
> Officers proceeded to that area and approached the man later identified as the defendant, James Chapman. The defendant was accompanied by another man, a resident of the apartment complex. The defendant appeared to be nervous upon encountering the officers and began moving away. One of the officers ordered the defendant to stop and inquired whether the defendant was armed. The officers became concerned that the defendant might have a weapon in his baggy clothes.
>
> The defendant responded to the officers that he was not armed, but according to the officers he then suddenly darted his left hand

-4-

into his pants pocket and turned sideways away from them. The officers believed that the defendant was attempting to draw a weapon and grabbed the defendant's left hand to prevent him from doing so.

The defendant was ordered to put his hands up. He raised his hands, and as the officers began to initiate a frisk, the defendant pulled away and began to run. After taking a few steps the defendant ran into a metal pole, stumbled, and at that time officers caught him, forced him to the ground and attempted to put him under arrest for trespassing and failure to obey a lawful police request and obstructing a police officer.

The defendant attempted to escape but was eventually subdued and handcuffed. In one of his pockets officers found a loaded Clerke, Model 1st, .32 caliber S&W revolver, Serial No. 874912, loaded with live rounds of Remington .32 caliber S&W caliber ammunition.

Tr. of Sentencing Hr'g at 10-12; R. Vol. 3 at 30-32. Mr. Chapman was arrested and pled guilty.

In preparation for sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). The final PSR calculated an advisory sentencing range under the United States Guideline Commission, Guidelines Manual ("USSG") of 51 to 63 months, after a 3-level decrease in Mr. Chapman's total offense level for acceptance of responsibility, and considering his criminal history category of VI. Mr. Chapman filed a motion for a downward departure from the sentencing range based on diminished capacity. Defense counsel explained that, had Mr. Chapman been taking his medications, the offense would not have occurred. The government opposed the motion.

At the sentencing hearing, the district court heard argument from both sides. Mr. Chapman requested a sentence of forty-six months, based upon the departure motion, and he subsequently added a request for a below-Guidelines sentence based on the sentencing factors of 18 U.S.C. § 3553(a). Government counsel requested a sentence of fifty-nine months.

The district court indicated its awareness of Mr. Chapman's extensive mental health issues and tragic early life: "I can't imagine a more horrific tragic event than a child witnessing the gang rape and murder of his mother." Tr. of Sentencing Hr'g at 4; R. Vol. 3 at 24. The court also noted, "[i]f I were a judge in a different country, in a European union, I would be able to sentence this man to treatment in a hospital, which is where he should be. . . . This is a very troubling case for me. I couldn't go to sleep last night thinking about it. " Id. at 5; R. Vol. 3 at 25. The court then carefully reviewed Mr. Chapman's life, including his mental health struggles, as well as the details of his criminal history and the instant offense. The court ruled:

> I am going to grant the defendant's supplemented oral motion for a downward departure based on diminished capacity, and I am going to also order that a below-Guideline sentencing range sentence be entered in this case based on my analysis of the 3553(a) factors in this case.
>
> Therefore, I intend to sentence the defendant to a period of imprisonment of 46 months, to be followed by a term of supervised release of three years.

Id. at 20; R. Vol. 3 at 40. The court further explained that it based its sentence on "the arguments of counsel," as well as Mr. Chapman's allocution and "the policy statements and the Sentencing Guidelines, the statutory factors set forth in Section 3553(a) and . . . the recommendations of the probation officer." Id. at 21; R. Vol. 3 at 41. The court then noted that the below-Guideline sentence "reflects the seriousness of the offense, affords adequate deterrence to future criminal conduct and will protect the public from further crimes of this defendant." Id. Finally, the court told Mr. Chapman that it was paramount that he never again possess a firearm, that he continue to take his medications, and that he was "getting about as lenient a sentence as [he could] get under the circumstances today." Id. at 26; R. Vol. 3 at 46. This appeal followed.

**DISCUSSION**

Mr. Chapman challenges the substantive reasonableness of his sentence, arguing that, in light of his tragic and troubled history, particularly his extensive mental health problems, the below-Guideline sentence of forty-six months is too long. We disagree.

A sentence is substantively unreasonable if its length is "excessive given all the circumstances of the case in light of the factors set forth in [18 U.S.C.] § 3553(a)." United States v. Gantt, 679 F.3d 1240, 1249 (10th Cir. 2012) (internal quotation marks omitted). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant,"

-7-

18 U.S.C. § 3553(a)(1); "the need for the sentence imposed" to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant," id. § 3553(a)(2); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." id. § 3553(a)(6). "Under a deferential abuse-of-discretion standard, we deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." Gantt, 679 F.3d at 1249 (internal quotation marks omitted). And, we review "all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). Finally, there is a "rebuttable presumption of reasonableness to a below-guideline sentence challenged by the defendant as unreasonably harsh." United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011). This is a high standard.

Indeed, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall v. United States, 552 U.S. 38, 51 (2007). Such deference to the district court is sensible, given that "[a] sentencing judge has greater familiarity with the case and the defendant before it than this court or the Sentencing Commission and is therefore 'in a superior position to find facts and

judge their import under § 3553(a) in the individual case.'" United States v. Munoz-Nava, 524 F.3d 1137, 1148 (10th Cir. 2008) (quoting Gall, 552 U.S. at 51)).

This is a case in which deference to the district court is particularly appropriate. The court indicated its familiarity with the facts of Mr. Chapman's entire history. It further expressly stated its concern with the court's ability to address Mr. Chapman's mental health needs. The court then granted Mr. Chapman's request for a below-Guidelines sentence, stating that he was getting as lenient a sentence as possible in the circumstances of his case. The court clearly exercised its discretion to vary from the advisory Guidelines sentence, and, in doing so, the court examined all the relevant factors and circumstances it was required to consider. While Mr. Chapman asks us to vary further, we must defer to the district court's obvious familiarity with the particular nuances of Mr. Chapman's case and its selection of a reasonable sentence. That court had "an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance under § 3553(a)." United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008). And, that institutional advantage extends to determining the extent of the variance in this particular case.

## CONCLUSION

For the foregoing reasons, we conclude that the sentence imposed is reasonable. AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge