**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 17-7070 |
| | (D.C. No. 6:16-CR-00025-RAW-1) |
| JASON WAYNE CAREY, | (E.D. Okla.) |
| Defendant - Appellant. | |

_____

## ORDER AND JUDGMENT[*]
_____

Before **LUCERO**, **HARTZ**, and **MORITZ**, Circuit Judges.
_____

Jason Wayne Carey appeals the district court's judgment sentencing him to

36 months' imprisonment, arguing that the court improperly relied on United States

Sentencing Guidelines Manual § 5K2.14 (U.S. Sentencing Comm'n 2015)[1] (USSG or

Guidelines) as one of three grounds for a three-level upward departure.  Exercising

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The district court used the 2015 version of the Guidelines Manual, and all our citations are to that version.

# BACKGROUND

After pleading guilty to one count of felon in possession of an explosive, *see* 18 U.S.C. § 842(i)(1), Carey was initially sentenced to 60 months' imprisonment. On appeal, the parties agreed that due to an intervening change in the law, Carey's prior conviction no longer qualified as a crime of violence. Thus, we concluded that the district court improperly increased his base offense level, and we remanded to the district court to vacate its judgment and resentence Carey. *See United States v. Carey*, 689 F. App'x 627, 628 (10th Cir. 2017).

At resentencing, the district court relied on USSG § 2K1.3(a)(4)(A) to calculate a base offense level of 16. The court decreased the level to 13 for Carey's acceptance of responsibility, resulting in a Guidelines range of 24–30 months. The court then granted the government's motion for an upward departure based on three Guidelines provisions. The first two are in Application Note 10 of the Commentary to § 2K1.3 and provide: "An upward departure may be warranted in any of the following circumstances: . . . (B) the explosive materials were of a nature more volatile or dangerous than dynamite or conventional powder explosives (e.g., plastic explosives); . . . or (D) the offense posed a substantial risk of death or bodily injury to multiple individuals." USSG § 2K1.3 cmt. n.10. The third basis for the upward departure was § 5K2.14, which reads: "If national security, public health, or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense."

2

The court found that by a preponderance of the evidence the circumstances of the case supported an upward departure: Carey possessed "four separate and highly volatile chemicals," and based on testimony at the first sentencing hearing by a special agent from the Bureau of Alcohol, Tobacco, and Firearms (ATF), the court found that all of the chemicals were "more dangerous than normal explosives." R., Vol. V at 29–30.[2] These chemicals were improperly stored at Carey's residence and therefore "had the potential to significantly endanger the health and safety of first responders, law enforcement, and anyone in or near the residence, including neighbors in the surrounding area." *Id.* Responding personnel were placed at "substantial risk" when they were "exposed to these and other chemicals" in the residence. *Id.* at 30. The ATF agent "experienced skin irritation" after exposure "to a bottle labeled hexamine containing nitric acid." *Id.* Accordingly, the court departed upward three levels to 16, which resulted in a Guidelines range of 33–41months, and sentenced Carey to 36 months' imprisonment. Carey appeals.

## DISCUSSION

Carey raises one issue on appeal. He argues that the district court erred in departing upward based on § 5K2.14's public health or safety ground because

---

[2] The four chemicals were "HMTD [hexamethylenetriperoxidediamine], MEKP [methyl ethyl ketone peroxide], RDX [cyclotrimethylenetrinitramine, also known as Royal Demolition Explosive or Research Department Explosive], and picric acid." R., Vol. V at 29; *see also* Supp. R., Vol. I at 28.

§ 2K1.3 already takes danger to public health or safety[3] into account by virtue of the inherent danger in explosives. But in his discussion of this single issue, we see two: facial and as-applied challenges to the district court's reliance on § 5K2.14. His stated issue asserts a facial challenge—i.e., the base offense level established by § 2K1.3 already takes into account the inherent risk that possession of explosives poses to public health and safety. Thus, his facial challenge maintains that § 5K2.14 doesn't lie outside the "heartland" of § 2K1.3, and the district court improperly relied on § 5K2.14.[4] But Carey also states an as-applied challenge in that he argues the district court failed to make any findings justifying a conclusion that § 5K2.14's public health and safety factor was present substantially in excess of § 2K1.3's heartland.[5] He doesn't challenge the district court's reliance on Application Note 10(B) or (D) of § 2K1.3 in support of the departure, but he claims that reliance on

---

[3] Section 5K2.14's national security ground isn't at issue.

[4] *See, e.g.*, Aplt. Opening Br. at 9 ("It is obvious that explosives are capable of exploding and injuring people who are nearby. This [i.e., § 2K1.3] is essentially the same factor that § 5K2.14 is concerned with—that public health and safety has been significantly endangered."); Aplt. Reply at 6 ("A departure based on endangerment of public health or safety does not identify a feature outside the heartland [of § 2K1.3], much less a feature substantially in excess of that which is in the heartland.").

[5] *See, e.g.*, Aplt. Opening Br. at 12 (arguing that the district court "made no findings to justify a conclusion that the factor in § 5K2.14 was present to a degree substantially in excess of that which ordinarily is involved in a § 2K1.3 offense," and therefore "a basis for the departure was not established in the record").

§ 5K2.14 wasn't harmless because there's a likelihood that the degree of departure would be lower if there were fewer grounds supporting it.[6]

The facial challenge—whether § 5K2.14 lies outside the heartland of § 2K1.3—is essentially a legal question. Therefore, our review of that issue is plenary. *See United States v. Robertson*, 568 F.3d 1203, 1211 (10th Cir. 2009); *United States v. Montgomery*, 550 F.3d 1229, 1233 (10th Cir. 2008).

The Guidelines describe the "heartland" of a guideline as "a set of typical cases embodying the conduct that each guideline describes." USSG Ch.1, Pt. A, § 1(4)(b) (internal quotation marks omitted). Section 2K1.3 is partially entitled "Unlawful Receipt, Possession, or Transportation of Explosive Materials," and sets a base offense level of 16 if the defendant was, like Carey, "a prohibited person at the time [he] committed the instant offense." USSG § 2K1.3(a)(4)(A).[7] The title of Part K, in which § 2K1.3 appears, is "Offenses Involving *Public Safety*." USSG Ch. 2, Pt. K (emphasis added) (typeface altered). Given the potential danger explosives can pose to public health or safety and the title of Part K, it's therefore logical to conclude that the "heartland" of § 2K1.3(a)(4)(A)'s base level includes cases

---

[6] The government claims that Carey's appeal "hinges on" whether the district court in effect engaged in impermissible double counting of the same sentencing factor when it relied on § 2K1.3 cmt. n.10 and § 5K2.14 to depart upward. Aplee. Response Br. at 13. But this characterization misinterprets Carey's argument, and in his reply brief, he affirmatively disclaims any double-counting argument.

[7] A "prohibited person" is defined as "any person described in 18 U.S.C. § 842(i)," USSG § 2K1.3 cmt. n.3, which is the statute Carey pleaded guilty to violating—a convicted felon in possession of an explosive.

involving some measure of risk to public health or safety inherent in a prohibited person's possession of explosive materials.

Application Note 10, however, makes clear that the heartland of § 2K1.3 doesn't encompass the potential degree of risk to public health or safety posed by all the possible circumstances that could accompany the possession of explosive materials. As relevant to our analysis, Note 10 acknowledges that "[a]n upward departure may be warranted" if "(A) the quantity of explosive materials significantly exceeded 1000 pounds"; "(B) the explosive materials were of a nature more volatile or dangerous than dynamite or conventional powder explosives (e.g., plastic explosives)"; or "(D) the offense posed a *substantial* risk of death or bodily injury to *multiple* individuals." USSG § 2K1.3, cmt. n.10 (emphasis added). By recognizing these grounds for departing upward, Note 10 makes clear that the heartland of § 2K1.3 doesn't include offenses involving extremely large quantities of explosive materials or explosive materials more volatile or dangerous than the baseline established in 10(B), either of which could pose a greater risk to public health or safety than might be present in the set of typical cases; or offenses involving a *substantial* risk of bodily injury or death to *multiple* people. It therefore logically follows that the heartland of § 2K1.3 doesn't include the *significant* endangerment to public health or safety referred to in § 5K2.14.

We next consider Carey's as-applied challenge to the sufficiency of the district court's factual finding that the circumstances of Carey's offense warranted an upward departure under § 5K2.14. We agree with Carey that the district court didn't

6

expressly identify the heartland of § 2K1.3 and explain why Carey's offense fell outside of it. But Carey failed to preserve this issue below, so we review his as-applied challenge for plain error. *See United States v. Gantt*, 679 F.3d 1240, 1246–47 (10th Cir. 2012). To prevail under the plain-error doctrine, there must be an "error" that "was plain—that is, obvious under current well-settled law," and that affected his "substantial rights" and "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (brackets and internal quotation marks omitted).

Here we conclude there was no error. The district court heard evidence and made findings germane to whether Carey's offense presented circumstances "substantially in excess of . . . that which ordinarily is involved in that kind of offense," as is necessary when "the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range," USSG § 5K2.0(a)(3). The court heard extensive testimony from the ATF special agent who was part of the team that processed Carey's residence. The agent testified that the explosives found inside the residence were more powerful than dynamite or conventional powder explosives. Moreover, because the explosives were improperly stored, they were subject to detonation through a variety of means such as static, shock, and friction, thereby posing significant danger to public health or safety, as well as responding personnel. The agent noted that one of the explosives, HMTD, is four times more powerful than a blasting cap and used only by hobbyists and certain terrorist organizations. Another, MEKP, had never been recovered in the United

7

States. The agent also described the additional danger to public health or safety posed by the proximity of other chemicals, some of which were also improperly stored, if any of the explosives had detonated. He discussed the skin irritation he immediately felt upon opening a small refrigerator that, like the room itself, had a strong chemical odor. Photographs admitted into evidence confirmed the agent's description of the bedroom laboratory's condition as "deplorable." R., Vol. IV at 65; *see also* Supp. R., Vol. I at 2–18.

The district court relied on the agent's testimony in finding that the circumstances of Carey's offense justified an upward departure under § 5K2.14. Although the court didn't recite all the relevant portions of that testimony or expressly make the more particularized finding that Carey's offense presented circumstances substantially in excess of those ordinarily involved in possession of explosives by a felon, it did make findings consistent with our view that § 2K1.3's heartland is informed by § 2K1.3's Application Note 10. Specifically, the district court found that the explosives were more dangerous than dynamite or conventional powder explosives and were stored improperly, thereby posing a significant danger to public health or safety. The agent's testimony provided more than adequate support for those findings. Therefore, the district court did not err in basing the upward departure, in part, on § 5K2.14.

8

**CONCLUSION**

The district court's judgment is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge