FILED
United States Court of Appeals
Tenth Circuit

January 20, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTIAN MENDEZ-LOPEZ,

Defendant - Appellant.

No. 20-4029
(D.C. No. 4:18-CR-00116-DN-2)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Christian Mendez-Lopez appeals his 48-month prison sentence for possessing

with intent to distribute 50 grams or more of methamphetamine.  Exercising

jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

Utah Highway Patrol officers stopped Mr. Mendez-Lopez and his co-

defendant, Steve Rios, in southern Utah and discovered they had cocaine and

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

methamphetamine. A federal grand jury charged them with one count of possessing 50 grams or more of methamphetamine with intent to distribute and one count of possessing 500 grams or more of cocaine with intent to distribute. Both of them pled guilty to the first count in exchange for dismissal of the second count and both were sentenced to 48 months in prison.

At his sentencing hearing, Mr. Mendez-Lopez argued that he deserved less than 48 months because Mr. Rios, a U.S. citizen, would remain in the country after serving his sentence, whereas Mr. Mendez-Lopez, a Mexican citizen, would be deported. He argued deportation would be an "additional penalty" and he therefore should receive less prison time to accomplish the goals of sentencing. Aplt. App. at 19 (Redacted Sentencing Transcript).

## II. **DISCUSSION**

Mr. Mendez-Lopez interprets the district court's rejection of his sentencing argument as ruling that the likelihood of deportation is an improper sentencing consideration under the 18 U.S.C. § 3553(a) factors. He therefore asserts that the district court committed procedural error at sentencing. *See United States v. Sanchez-Leon*, 764 F.3d 1248, 1263–64 (10th Cir. 2014) (finding that district court's refusal to consider a valid sentencing factor was procedural error).

We review an alleged procedural error at sentencing for abuse of discretion, which, in this context, means "we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012).

2

Our review of the sentencing transcript reveals that the district court did not say deportability could not be considered. Two passages from the sentencing hearing transcript bear this out.

First, Mr. Mendez-Lopez's attorney stated, "Once he's back in Mexico, unless there's some dramatic shift in immigration law, which I think this Court is aware is virtually inconceivable—." *Id.* The district court interjected, "I've grown old waiting for it." *Id.* Counsel resumed the argument, prompting the district court to ask,

> But don't you think that in some ways, knowing of his status and engaging in this activity, that that's an entirely just collateral consequence? How do I say that he should receive a reduction because he's illegally in this country, and say to an American citizen that you have a significant sentence? How do I do that?

*Id.* at 18. Counsel responded that "the Court has to look at all of those consequences together. And I would never say that you had to accept this argument. . . . But I think you have to consider it . . . ." *Id.* at 19.

Second, the district court pronounced:

> And I think Mr. McMurray's [defense counsel's] statements are all very apt and articulate. You are going to have collateral consequences that Mr. Rios did not have. I don't think that's unjust. But I do think that for the reasons of general deterren[ce], for the reasons of avoiding disparities, not only with Mr. Rios but with the other people that we sentence, this is very low for this quantity of drugs in this court [referring to a request for 24 months, *see id.* at 23, 28]. And to some extent, Mr. McMurray, we're bound by gravity here. Inertia rules the courts and it's expressed in the sentencing guidelines, like you say, but it is also expressed in all the other decisions and we're

3

> told to consider those.
>
> And I know that there are differences sometimes, but it is my judgment in this case that you're sentenced to 48 months in the custody of the Bureau of Prisons. At the end of that term you will be deported.

*Id.* at 30.

The district court did not say § 3553(a) prohibited it from considering deportability. In the first passage, the court asked how it could give Mr. Mendez-Lopez a lower sentence than Mr. Rios based solely on the former's undocumented status. The court was alluding to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The second passage confirms that the court had unwarranted disparities in mind. It stated that a 24-month sentence would be "very low for this quantity of drugs in this court," and although "there are differences sometimes" that justify sentencing disparities, the court found no such differences in this case. Aplt. App. at 30. The court therefore considered deportability but decided it did not justify a lower sentence for Mr. Mendez-Lopez.

Mr. Mendez-Lopez argues the district court's statement, "I've grown old waiting for [a change in immigration law]," *id.* at 17, combined with its references to "gravity" and "[i]nertia," *id.* at 30, demonstrates "the court believed alienage was a matter requiring Congressional action and it was not something a sentencing court could rightfully consider under § 3553," Aplt. Redacted Opening Br. at 17. We disagree. The "grown old" statement was a personal observation, and the invocation

4

of "gravity" and "inertia" aligned with the court's concern about unwarranted disparities.

Because the district court did not, as Mr. Mendez-Lopez contends, say it could not consider deportability in its § 3553 analysis, his procedural reasonableness challenge fails.

### III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge